Filed 5/19/23  P. v. Reyes CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ALFREDO REYES,<br><br>        Defendant and Appellant. | F084281<br><br>(Super. Ct. No. F09904296)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Louis M. Vasquez, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

Defendant Jose Alfredo Reyes appeals from the trial court's 2022 denial of his petition to have his two manslaughter convictions vacated and to be resentenced, pursuant to former Penal Code section 1170.95, now section 1172.6.[1] The parties agree that the trial court failed to apply the correct standard of review when it denied defendant's petition on the merits under section 1172.6, subdivision (d)(3), but they disagree whether remand is required. Defendant claims that the trial court failed to make any findings of fact and, therefore, the error cannot be assessed for prejudice, necessitating remand. The People contend that the trial court's application of a substantial evidence standard is harmless in this case because there is no reasonable probability the result would have been more favorable to defendant in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 837 (*Watson*).)

As explained below, we reject defendant's argument that the trial court failed to make any findings. To the contrary, the court found that defendant is not entitled to relief under section 1172.6 because he was a major participant in the murders and he acted with reckless indifference to human life. However, it is not clear that the court acted as an independent factfinder applying the requisite beyond-a-reasonable-doubt standard rather than simply reviewing the record for substantial evidence that could support such a finding. Even if we assume the less stringent standard of review for state law errors under *Watson* applies, the error is not harmless on the facts of this case. Accordingly, we shall remand the matter for an evidentiary hearing that comports with the standard of review set forth in section 1172.6, subdivision (d)(3).

---

[1] All further references are to the Penal Code. Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6. (Assem. Bill No. 200 (2021–2022 Reg. Sess.) (Assembly Bill 200).) We refer to the statute herein by its present section number.

## PROCEDURAL HISTORY

In July 2009, Gary DeBartolo and Sandy DeBartolo were murdered in their home by Leroy Johnson during the commission of a planned burglary and robbery.[2] Defendant and his codefendants, Johnson, Neko Wilson, Andrew Jones, Christopher Butler, and Dawn Singh, were arrested in connection with the crimes and charged with murder with burglary, robbery, and multiple victims special circumstances. (§§ 187, subd. (a), 190.2, subds. (a)(3), (a)(17)(A), (G).) In 2013, in exchange for his testimony in other proceedings and for a stipulated term of 32 years in prison, defendant entered a guilty plea to two counts of voluntary manslaughter, one count of robbery, and one count of burglary, and, as to manslaughter, he admitted to one sentence enhancement for personal use of a firearm in the commission of a felony.[3] (§§ 192, subd. (a), 12022.5, subd. (a), 211, 459.) Defendant subsequently testified for the prosecution at Singh's 2016 jury trial and Johnson's 2021 jury trial.[4]

Johnson's case, which was tried as a capital murder case, was the last to be resolved and defendant was sentenced on February 24, 2022, following Johnson's sentencing.[5] Prior to defendant's sentencing hearing, he filed a petition for resentencing under section 1172.6. At the hearing, defendant requested his petition be taken off calendar in light of the fact he had not yet been sentenced, which was a prerequisite to

---

[2] Because the DeBartolos share the same last name, we refer to them by their first names. No disrespect is intended.

[3] Defendant's 32-year sentence was based on two upper terms of 11 years each for manslaughter and the upper term of 10 years for the firearm enhancement.

[4] This court previously granted defendant's request for judicial notice of the reporter's transcript in Johnson's appeal, case No. F083895. We now grant his request for judicial notice of our nonpublished opinion in *People v. Singh* (Nov. 8, 2019, F074785), and we take judicial notice of the reporter's transcript in that appeal.

[5] In 2021, a jury convicted Johnson of two counts of first degree murder with burglary, robbery, and multiple victims special circumstances findings, and, following the penalty phase, returned a verdict of life in prison without the possibility of parole. He was sentenced in February 2022, and his appeal is pending before this court.

3.

relief under section 1172.6. The trial court granted the request and imposed a 32-year sentence in accordance with the terms of the parties' plea bargain.

The People subsequently filed a response to defendant's petition, and the court appointed counsel to represent defendant and set an order to show cause hearing. The hearing record reflects that the court had met with the parties off the record to discuss procedure and found that defendant made a prima facie showing for relief. (§ 1172.6, subd. (c).) The court then invited the parties make a record regarding procedural status and preference for proceeding.

Defense counsel represented he was ready to proceed and to submit on the transcripts given that the judge hearing the petition also presided over the jury trials of Singh and Johnson. The prosecutor was also ready to proceed. The court, being familiar with the facts, stated for the record that defendant is not the actual killer of the DeBartolos, and that it accepted defendant's petition allegations "that he did not with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of the murder in the first degree." The court articulated the issue as "whether there is a factual basis and substantial evidence to establish that the defendant was not a major participant in the felony or that he did not act with reckless indifference to human life during the course of the crime or the felony."

The court stated that the People, in their response, addressed the issues and provided authority with respect to the findings the court needed to make, and the court had reviewed caselaw concerning the findings it had to make. The court then went over the nonexclusive factors set forth in *Banks* and *Clark* that guide the determination whether a defendant was a major participant who acted with reckless indifference to human life.[6] The court found that, "when considered in totality, [they] sufficiently

---

[6] *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

4.

support the judgment." The Court concluded, "Having heard Mr. Reyes' testimony in two trials and having heard the corroborative evidence in those two trials, I'm satisfied that Mr. Reyes is in fact a major participant in the underlying felonies and the murder of the DeBartolos and that he did act with reckless indifference to human life. Therefore, I find that he is not entitled to relief pursuant to … Section [1172.6] and his previously entered convictions will stand."

## DISCUSSION

### I. Summary of Changes Effected by Senate Bill No. 1437 and Senate Bill No. 775[7]

As stated, defendant was arrested in 2009 and charged with murder with special circumstances based on his participation in an armed robbery and burglary, during which the DeBartolos were killed by Johnson. Defendant entered his plea to voluntary manslaughter in 2013, and at that time, "'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.'" (*People v. Strong* (2022) 13 Cal.5th 698, 704 (*Strong*), quoting *People v. Gonzalez* (2012) 54 Cal.4th 643, 654.)

Thereafter, the Legislature enacted Senate Bill 1437 "'to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual.'" (*People v. Nash* (2020) 52 Cal.App.5th 1041, 1055, quoting Stats. 2018, ch. 1015, § 1, subd. (e).) Effective January 1, 2019, Senate Bill 1437 "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to

---

[7] Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437); Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775).

murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).) [¶] To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' …

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added [former] section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

Two years later, the Legislature enacted Senate Bill 775, which, effective January 1, 2022, and relevant to this appeal, amended former section 1170.95 to extend the petition process to those convicted of attempted murder or manslaughter, and reaffirmed the applicable burden of proof at a resentencing hearing. (Stats. 2021, ch. 551, § l, subds. (a), (c).) To that end, the bill changed the language in

6.

subdivision (d)(3) of section 1172.6 from, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing," (Stats. 2018, ch. 1015, § 4, subd. (d)(3)) to, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019" (Stats. 2021, ch. 551, § 2, subd. (d)(3)).  The bill also added, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (*Ibid.*)  Assembly Bill 200 subsequently renumbered section 1170.95 to section 1172.6, effective June 30, 2022.

## II.    Section 1172.6 Petition Process

Defendant filed a petition seeking relief from his conviction under section 1172.6, subdivision (a), shortly after Senate Bill 775 was effective.  That section provides:

> "(a)    A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

> "(1)    A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

> "(2)    The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at

7.

which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Pursuant to subdivision (c) of section 1172.6, "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." As previously stated, in this case, the trial court found defendant made a prima facie showing and set an order to show cause hearing.

Relevant to the appeal in this case, section 1172. 6, subdivision (d)(3), provides:

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. *A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.* If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated

8.

and the petitioner shall be resentenced on the remaining charges." (Italics added.)

## III.    Analysis

### A.    Assessing Harmlessness of Standard-of-review Error Under Section 1172.6, Subdivision (d)(3)

The People concede that the trial court incorrectly evaluated defendant's petition under a substantial evidence standard of review, but they argue the error was harmless under *Watson* because there is no reasonable probability that the result would have been more favorable to defendant under the correct standard. Defendant does not address whether harmless error review is appropriate as a general matter or, if so, whether *Watson* applies. Instead, he takes the position that the trial court failed to act as a finder of fact and in the absence of any findings, the error cannot be evaluated for harmlessness.

Contrary to defendant's argument, the superior court judge, who also presided over the jury trials of Singh in 2016 and Johnson in 2021, concluded that, based on the evidence, defendant "is in fact a major participant in the underlying felonies and the murder of the DeBartolos and that he did act with reckless indifference to human life." This constitutes a finding. However, the parties agree that the language used indicates the court applied a substantial evidence standard of review, and we accept the People's concession on that point. The Legislature made clear in enacting Senate Bill 775 that "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).)

At issue, then, is whether the error is reviewable for harm and, if so, which standard applies. The petition process "'is purely a creature of state statutory law'" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1152–1153, quoting *People v. Epps* (2001) 25 Cal.4th 19, 29), and, generally, error under state law is subject to the *Watson* harmless error test, *People v. Lewis* (2021) 11 Cal.5th 952, 973, citing *People v. Epps, supra*, at p. 29). Nevertheless, in some instances, "'state statutes may create liberty interests that

9.

are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment'" (*People v. Pillsbury* (2021) 69 Cal.App.5th 776, 789–790, quoting *Vitek v. Jones* (1980) 445 U.S. 480, 488), and courts "evaluate the harmlessness of violations of the federal Constitution under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, which requires reversal unless the error is harmless 'beyond a reasonable doubt'" (*People v. Gonzalez* (2018) 5 Cal.5th 186, 195–196; accord, *Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1100, fn. 11).[8]

Section 1172.6, subdivision (d)(3), expressly requires the prosecution to prove to the trial court, as an independent factfinder, that the defendant is guilty beyond a reasonable doubt of murder or attempted murder under the law as amended by Senate Bill 1437. (*People v. Saibu* (2022) 81 Cal.5th 709, 737 (*Saibu*); *People v. Clements* (2022) 75 Cal.App.5th 276, 294–295 (*Clements*).) If the prosecution fails to meet its burden, the defendant is entitled to have his or her conviction, and any attached allegations or enhancements, vacated and to be resentenced. (§ 1172.6, subd. (d)(3).) On review following a finding made in accordance with the applicable standard of review, the appellate court reviews the trial court's findings for substantial evidence. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639; *Clements, supra*, at p. 298.) These standards mirror those applicable to a finding of guilt in the first instance on criminal charges, in accordance with legislative intent to ensure liability for murder, attempted murder, and manslaughter is commensurate with culpability. Under such circumstances, it is unclear that the error at issue here may be fairly described as merely one under state law, as the People contend. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 229 ["'[I]n an appeal

---

[8]    In rare instances, an error may also be structural and, therefore, reversible per se. "Errors may be deemed structural according to '"three broad rationales"': where '"the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest,"' '"where the effects of the error are simply too hard to measure,"' or where '"the error always results in fundamental unfairness."'" (*People v. Tran* (2022) 13 Cal.5th 1169, 1208, quoting *In re Christopher L.* (2022) 12 Cal.5th 1063, 1077.)

from a denial of a section [1172.6] petition, the private interests at stake are the liberty interests of the person who may be in custody and seeking release.' [Citation.] The potential for relief under section 1172.6 from a prior murder, attempted murder, or manslaughter conviction is a 'significant' interest."]; *People v. Lewis, supra*, 11 Cal.5th at p. 973 [*Watson* applies to error in failing to appoint counsel at *outset* of § 1172.6, subd. (c), petition process because "the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so" and Legislature "created a purely statutory right to counsel that attaches before the issuance of an order to show cause"]; *People v. Garrison* (2021) 73 Cal.App.5th 735, 746–747 [where the record shows the defendant was the actual killer, trial court's application of incorrect standard is reviewable for prejudice, but whether *Watson* or *Chapman* applies, error harmless]; *People v. Pillsbury, supra*, 69 Cal.App.5th at p. 790 [concluding recall and resentencing mechanism under former § 1170, subd. (d)(1), now § 1172.1, subd. (a)(1), creates "liberty interest entitled to due process protection"].) In this case, however, it is not necessary for us resolve which standard of review applies to the error at issue because even if we assume *Watson* applies for the sake of argument, the error is not harmless.

### B. *Banks* and *Clark* Factors

Defendant was not the actual killer and did not act with intent to kill (§ 189, subd. (e)(1)–(2)) and, therefore, his entitlement to relief under section 1172.6, subdivision (d)(3), depends on whether the prosecutor proves, beyond a reasonable doubt, that he is guilty of murder because he "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) This language derives from the United States Supreme Court's decisions in *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*) and *Enmund v. Florida* (1982) 458 U.S. 782, both death penalty cases. As interpreted and clarified by the California Supreme Court in *Banks* and then in *Clark*, the determination whether a

11.

defendant is a major participant who acted with reckless indifference to human life for the purpose of criminal liability requires a careful review of the case-specific facts, analyzed against a nonexclusive list of factors. (*Strong, supra*, 13 Cal.5th at p. 704.) "Toward one end of the spectrum was the getaway driver the high court found constitutionally ineligible for death in *Enmund*[, *supra*, at pp.] 797–801: a "'minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.'" (*Banks,* [*supra*, 61 Cal.4th] at p. 800.)[9] Toward the other end of the spectrum were the confederates found eligible for death in *Tison, supra*, 481 U.S. 137, who had broken convicted murderers out of jail, armed them, captured an innocent family, 'held [the family] at gunpoint while the two murderers deliberated whether the family should live or die, [and] then stood by while all four members were shot.' (*Banks,* at p. 802.)" (*Id.* at p. 705.)

This case, as do many, falls somewhere in the middle of these two poles, where reasonable factfinders might reach different conclusions as to the requisite findings. As a threshold matter, it is clear under the law that the culpability requirement for acting with reckless indifference to human life cannot be "satisfied by the fact a participant in an armed robbery could anticipate lethal force might be used." (*Banks, supra*, 61 Cal.4th at p. 808.)[10] "'[T]he possibility of bloodshed is inherent in the commission of any violent felony and this possibility is generally foreseeable and foreseen; it is one principal reason that felons arm themselves'" (*ibid.*), but "[a]wareness of no more than the foreseeable

***

**9**     In Singh's case, this court reversed the jury's robbery-murder and burglary-murder special circumstance findings after concluding they were not supported by substantial evidence that Singh, who was the getaway driver during the crimes at issue here, was a major participant in the underlying felony or that she acted with reckless indifference to human life. (*People v. Singh* (Nov. 8, 2019, F074785) [nonpub. opn.].)

**10**     Given defendant's active, on-scene participation in the burglary and robbery, our discussion focuses on the more difficult question of reckless indifference to human life, but this focus should not be interpreted as expressing an opinion on whether defendant was or was not a major participant. Both issues must be resolved by the trial court in the first instance on remand.

risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum" (*ibid.*). In *Banks*, the California Supreme Court further noted, "*Tison* does not specify those few felonies for which any major participation would 'necessarily exhibit[] reckless indifference to the value of human life.' [Citation.] One could surmise a partial list of crimes the United States Supreme Court might agree on—say, the manufacture and planting of a live bomb. But we need not speculate. Even the Tisons' prison break of two convicted murderers was remanded, rather than treated as per se demonstrating the requisite reckless indifference. Plainly, armed robbery does not qualify." (*Id.* at p. 810, fn. 9.)

As recently summarized in *In re Scoggins*, "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' (*Tison, supra*, 481 U.S. at p. 157.) Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.' (*Ibid.*) Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' (*Clark, supra*, 63 Cal.4th at p. 617.)

"Reckless indifference to human life has a subjective and an objective element. (*Clark, supra*, 63 Cal.4th at p. 617.) As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' (*Banks, supra*, 61 Cal.4th at p. 801; see *Clark,* at p. 617.) As to the objective element, '"[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."' (*Clark*, at p. 617, quoting

Model Pen. Code, § 2.02, subd. (2)(c).) [As previously stated,] '[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death"' satisfies the statutory requirement. (*Banks*, at p. 808.) Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life. (*Ibid.*; see *Clark*, at p. 623.)" (*In re Scoggins* (2020) 9 Cal.5th 667, 676–677.)

### C.    Factual Summary[11]

Wilson, who knew the DeBartolos personally, masterminded the plan to rob them of marijuana and cash from their Kerman home. Defendant had met Wilson through his childhood friend, Jones, but he did not know Wilson well, and he only met Singh approximately one week before the crimes and Johnson one or two nights beforehand. On the day of the robbery, defendant was armed with a handgun; Butler, who remained in the getaway car, had a gun; and Johnson had a knife from Wilson's truck.[12] Defendant expected Gary, but not Sandy, to be home, he did not anticipate any resistance, and he testified that one of his roles was to "make sure that things did not get out of hand." Both he and Johnson planned to display weapons to intimidate anyone inside into cooperating.

While Jones, Butler, and Singh waited outside and Wilson drove around nearby to avoid being recognized by the DeBartolos, defendant entered the house through the open front door with Johnson behind him. Defendant saw Sandy sitting on the couch, and she looked scared, so he pointed his weapon downward and told her not to worry. They

---

**11**    There is no dispute that only defendant and Johnson entered the DeBartolo house the day of the murders and Johnson did not testify during his trial.

**12**    The prosecutor argued in his petition response that defendant "gave Johnson the knife that was used to murder the victims" and raised that point during the hearing. Although the trial court acknowledged the argument, it is not clear from the record if the court considered that evidence in reaching its determination. The relevant testimony is that there was a knife in the pocket behind the passenger seat in Wilson's truck, Johnson told defendant to pass the knife to him, and defendant did.

asked Sandy if anyone else was home and she said her husband was in the shower. Defendant went down the hall, leaving Sandy and Johnson behind, and found Gary getting out of the shower. Defendant "tried to calm him down." He had his gun out at that point and he asked Gary if anyone else was in the house. Gary said no and wanted to know if his wife was okay. Defendant told Gary she was, and he put his gun away as Gary put on some clothing and sat down on the bed.[13] Johnson then entered the bedroom with Sandy, and he and defendant argued because defendant wanted to have Jones and Butler come inside and Johnson did not. Defendant described Johnson as calm, however, and testified he did not raise his voice.

Gary told them he only had marijuana plants and did not have any packaged marijuana or any cash. Defendant then left the bedroom with Gary, and Sandy and Johnson remained behind. Gary showed defendant a grow room and another bedroom. As defendant was looking through a closet, he heard a male voice say "[o]uch" and turned around to see Gary bleeding and Johnson slicing his throat from behind. Johnson appeared calm and emotionless, and he did not say anything.

Defendant testified that he was "in shock." There was never any plan to restrain the DeBartolos or kill them; Wilson, who knew them, did not want anything to happen to them; there was no communication between defendant and Johnson in the house; and Johnson had seemed like "a normal dude" during their drive to Kerman. Defendant pulled his gun out when he saw Johnson cutting Gary's throat because he did not trust Johnson at that point and did not know if Johnson was "going to do the same to [him]." He recalled saying something to the effect of, "What the fuck are you doing[?]" and Johnson replying, "They didn't give me what I wanted." Defendant and Johnson then ran out of the room and defendant headed the opposite direction from Johnson, exiting

---

**13**     Gary was 61 years old and Sandy was 62 years old. Defendant described the couple as older and testified Gary was not a threat.

15.

through the back of the house.  As he ran out of the house, defendant saw Sandy lying on the floor.  He had not seen Johnson harm Sandy and at the time thought Johnson might have tied her up.

After fleeing for several blocks, defendant happened to see Wilson driving in his truck and flagged him down.  The two drove back to Fresno, where defendant got rid of his gun and clothing.  They stayed overnight in a motel room, and the next morning, saw on the news that the DeBartolos were dead.  They parted ways that day and defendant turned himself in approximately a week later.

## D. Reversal Required

Where the line lies between risks inherent in any armed robbery and major participation with reckless indifference to human life is for the factfinder to determine independently in the first instance.  If a determination that comports with the standards in section 1172.6, subdivision (d)(3), is made, our task on review is merely to determine whether substantial evidence supports the factfinder's determination.  In this case, however, we cannot discern from the record whether the trial court found sufficient evidence to support a finding that defendant was a major participant who acted with reckless indifference to human life or instead, acting as an independent factfinder, found that the prosecution met its burden of proving defendant guilty beyond a reasonable doubt of the murders because he was a major participant who acted with reckless indifference to human life.  As previously stated, the People concede the court applied a substantial evidence standard and we accept the concession.

Defendant failed to render any aid to the DeBartolos and instead fled (*Clark, supra*, 63 Cal.4th at pp. 619–620), but the evidence also shows that defendant and Johnson were armed only to ensure cooperation with their demands for marijuana and cash; no one was supposed to be restrained or harmed during the robbery; defendant did not perceive the DeBartolos as presenting any threat to them; defendant did not know Johnson to be violent or unpredictable and Johnson did not say anything or make any

16.

threats; the two were not in the house for a prolonged period of time; defendant heard nothing and was not aware that Johnson had killed Sandy while he was with Gary in another room; and he did not know Johnson was harming Gary until he heard Gary cry out (*Clark, supra*, at pp. 618–621; *Banks, supra*, 61 Cal.4th at pp. 807–811). On this evidence, reasonable triers of fact might reach different conclusions with respect to defendant's culpability under *Banks* and *Clark* and, therefore, it is critical that defendant's petition for relief be reviewed by the trial court acting as an independent factfinder in the first instance, holding the prosecutor to the correct burden of proof. Given that differing reasonable conclusions might be drawn in this case, we cannot find the error in applying the wrong standard of review harmless, even under *Watson*.

Underscoring our conclusion, we observe that the trial court discussed the appellate courts' decisions in *Bradley* and *Bascomb*, both of which noted, "'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard' of culpability required to support a felony murder conviction." (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1090; accord, *People v. Bradley* (2021) 65 Cal.App.5th 1022, 1036–1037.) We express no view on the conclusions reached by the courts in those cases, although as we have stated, participation in armed robbery, alone, is not sufficient. (*Banks, supra*, 61 Cal.4th at p. 808.) *Bradley* and *Bascomb* predated Senate Bill 775, and, notably, they merely determined that there was substantial evidence to support a finding that the defendant was a major participant who acted with reckless indifference to human life. (*Saibu, supra*, 81 Cal.App.5th at pp. 744–745.) The relevant measure in the trial court is not whether there is substantial evidence from which a rational trier of fact *could* find defendant was a major participant who acted with reckless indifference. (See *id.* at p. 744 ["reasonable minds may differ in how evidence is viewed"].) A substantial evidence standard requires a lesser showing and the Legislature has expressly determined that it is an insufficient basis to deny resentencing under section 1172.6,

17.

subdivision (d)(3). "[T]he plain text of the statute requires the trial judge to sit as a fact finder, not as a quasi-appellate court." [¶] [B]ecause the substantial evidence inquiry strips the standard of proof from the reviewing court's analysis, interpreting the statute as directing trial judges to sit as quasi-appellate courts would effectively read the standard of proof out of the provision." (*Clements, supra*, 75 Cal.App.5th at p. 295.)

Accordingly, we shall vacate the trial court's order denying defendant's petition and remand the matter for another hearing under section 1172.6, subdivision (d)(3), that comports with the standards set forth therein.

## DISPOSITION

The trial court's order denying defendant's petition under section 1172.6, subdivision (d)(3), is vacated and this matter is remanded to the trial court to hold a new evidentiary hearing, in conformity with the statutory requirements.